Karl F. Zeidler and Mina M. Zeidler v. Commissioner. Karl Zeidler, Jr. v. Commissioner.
Zeidler v. Commissioner
Docket Nos. 45306, 45307.
United States Tax Court
T.C. Memo 1955-184; 1955 Tax Ct. Memo LEXIS 156; 14 T.C.M. (CCH) 714; T.C.M. (RIA) 55184; June 30, 1955
Wilbur F. Dassel, Esq., Court Building, Evansville, Ind., for the petitioners. Elmer E. Lyon, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: Respondent determined the following deficiencies and additions to tax: Docket
Income
Sec.
Sec.
No.
Year
Tax
294(d)
293(b)
45306
1942
$ 3,471.75
$ 1,735.88
45306
1943
53,650.70
$8,595.51
26,693.97
45307
1944
10,910.37
659.38
5,455.19
Certain concessions have been made which can be reflected in a computation under Rule 50. The principal issues to be decided are the correct net income for the taxable years and whether the assessment and collection of additional income taxes are barred by the provisions of section 275 of the Internal Revenue Code of 1939. The additions *157 to tax determined under section 294(d) have not been contested in the petitions. Findings of Fact Some of the facts are stipulated and to that extent are included herein by reference. Petitioners are husband and wife residing at Evansville, Indiana, Their tax returns for the taxable years were filed with the collector of internal revenue for the district of of Indiana. Karl F. Zeidler and Karl Zeidler, Jr. are one and the same person. Karl started working for his father in the floral business when he was 14 years of age. At first he drew no salary but was given money for living expenses from time to time and at the end of the years beginning in 1916 the father gave him from $1,000 to $1,500. Petitioners were married in 1915. In 1920 they built a home on a lot they had purchased, the total cost being some $7,000. In 1925 the floral business was incorporated. Karl acquired 100 shares of the common stock at a cost of $10,000. In 1928 he and his brothers Fred and Kunze bought out the other stockholders, each acquiring a one-third interest. Karl became an officer of the corporation and continued so until 1943. He drew approximately $100 per week as salary. During "prohibition", *158 particularly in the 1920's, Karl was engaged to some extent in bootlegging and gambling. Most of his gambling was with dice. During 1942, 1943, and 1944 he gambled at various places in Evansville, Indiana, and in Kentucky. For about a month and a half in 1943 Karl was part owner of a gambling club in Evansville. The stakes were sometimes high. Karl kept no books of his gambling activities for any years. From 1920 to 1944, inclusive, Karl had checking and savings accounts at various banks in Evansville. In 1942 Karl suffered a stroke and obtained leave of absence from his duties at the floral company. During 1943 the stock of the Zeidler Company was owned one-third by the National City Bank as trustee for the heirs of Kunze Zeidler, one-third by Fred Zeidler, and onethird by petitioner Karl. Sometime in the earlier part of 1943 the trustee for the heirs of Kunze sold their one-third share in the outstanding capital stock of the corporation to Fred for $22,000. In the meantime, Fred was negotiating with Karl for the purchase of his stock. Karl at first asked $35,000 for his 200 shares of stock. Fred considered that this was more than the stock was worth and sought to purchase it *159 for $22,000, which was the amount that he had paid the trustee for an identical interest. Karl then made Fred an offer of $30,000 and Fred in turn offered him $25,000. They finally arrived at $27,000, and Karl asked Fred to give him a check for the same amount that he had given the trustee and to give him $5,000 in currency. On December 30, 1943, Fred issued his check payable to Karl in the amount of $22,000, which states on its face "In payment in full for 200 shares capital stock Zeidler Floral Company." At the same time he gave Karl $5,000 in currency. On December 31, 1943, the check cleared the bank and was canceled. Karl deposited $10,000 of this check and the $5,000 in currency in the Old National Bank savings account, $10,000 in the Citizen's National Bank savings account, $4,000 in the North Side savings account, and $3,000 in the National City Bank checking account, as noted below. In their return for the taxable year 1943, petitioners reported on Schedule "D" of their return a long-term capital gain from the sale of their stock in the Zeidler Floral Company in the amount of $2,000, reporting an adjusted basis for gain of $20,000 and a sales price of $22,000, and thereby *160 included in taxable income 50 per cent of the $2,000 gain. The $5,000 received by Karl in 1943 was not reported by him as income. It represented part of the purchase price received by him for his stock in the Zeidler Floral Company and should have been added to his long-term capital gain thereon. The income tax returns for the taxable years were prepared by an accountant. Karl examined the returns before he signed them. During the years prior to 1943, petitioners had a small safety deposit box at the Lamasco Bank in which they kept their deed, abstract, and at least two insurance policies. On April 21, 1943, Karl secured a large size safety deposit box at this bank. During 1943 petitioners made three purchases of negotiable Government bonds. The first purchase was for bonds in the amount of $50,000 and the purchase price was paid in currency. The second and third purchases of bonds were for $10,000 each and likewise were paid for in currency. On March 1, 1944, petitioners took the negotiable bonds in the face amount of $70,000 and with $30,000 additional in currency they purchased four $25,000 single premium annuities. Two of the annuities were issued to the petitioner Karl *161 and two were issued to his wife, Mina M. Zeidler. On December 31, 1941, 1942, 1943, and 1944, Karl owned assets as follows: 12/31/41
12/31/42
12/31/43
12/31/44
Cash: Lamasco Bank
$ 1,050.90
$ 5,071.70
$ 5,122.53
$ 5,173.88
National City Bank -
checking
548.59
1,811.17
5,137.53
1,026.86
savings
2,180.20
5,254.02
10,306.69
5,383.47
Citizens National Bank
10,000.00
10,050.00
North Side Bank
1,020.10
1,030.30
5,051.02
5,081.55
Old National Bank
10,000.00
10,100.00
U.S. Savings bonds (Series E)
750.00
3,150.00
4,875.00
6,525.00
U.S. Treasury bonds
70,000.00
Zeidler Floral Company stock
20,000.00
20,000.00
Life insurance annuities
49,239.50
Personal residence
7,869.00
7,869.00
7,869.00
7,869.00
Automobile
1,500.00
1,500.00
1,500.00
1,500.00
Furniture
695.57
767.15
767.15
Bonus receivable (Zeidler Floral)
2,000.00
2,000.00
Dividend receivable (Zeidler Floral)
2,000.00
He had no liabilities at the end of December 31, 1941, 1942, 1943, and 1944. Petitioners did not have $100,000 or any substantial sum in undeposited cash on hand on December 31, 1941. Petitioners incurred *162 and paid nondeductible personal living expenses for the taxable years 1942, 1943, and 1944 in the respective amounts of $3,000, $5,000, and $3,500. During the taxable years 1942, 1943, and 1944, petitioners made deposits to their checking and savings accounts and had total deposits and net deposits, as follows: 1942
1943
1944
Deposits: North Side Bank,
Karl Zeidler - savings
$ 10.20
$ 4,020.72
$ 30.53
Lamasco Bank,
Karl Zeidler - savings
7,020.80
50.83
51.35
Mina M. Zeidler - checking
1,480.47
National City Bank,
Karl Zeidler - checking
6,300.00
9,000.00
5,750.00
Karl Zeidler - savings
3,073.82
5,052.67
76.78
Old National Bank,
Karl Zeidler - savings
10,000.00
100.00
Citizens National Bank,
Karl Zeidler - savings
10,000.00
50.00
Total deposits
$16,404.82
$38,124.22
$ 7,539.13
Less: Transfers between accounts
5,000.00
Net deposits
$16,404.82
$38,124.22
$ 2,539.13
From 1919 to 1927, inclusive, the District Director at Indianapolis, Indiana, where petitioner is required by law to file his returns, has no record of petitioners filing a return for any of these years. Karl filed returns from 1928 to 1941, *163 inclusive, on which he reported income and paid income taxes in the total amount of $1,300.95. Karl has owned and driven Cadillac automobiles since 1935. Karl had interest income for the taxable years 1942 and 1943 in the respective amounts of $104.82 and $124.22, which was unreported. Karl's increase or (decrease) in net worth during 1942, 1943, and 1944 is in the respective amounts of $13,462.97, $80,247.16, and ($27,912.51). For the taxable years 1942 and 1943 petitioners had deductible living expenses in the amounts of $260.66 and $255.64, respectively. For the taxable years 1942, 1943, 1944, petitioners reported net income in the respective amounts of $9,739.34, $2,894.36, and $1,327.50. The correct net income of petitioners for the taxable years 1942, 1943, and 1944 is in the respective amounts of $16,462.97, $81,747.16, and $25,587.49. Opinion Petitioners' principal contentions are that all purported additional income was earned or received in years prior to the taxable years and that the respondent's net worth determination is not to be taken as the basis for finding unreported income because it arbitrarily took no cognizance of a claimed $100,000 in cash which *164 petitioners say they had cached in a safety deposit box at the beginning of the taxable period. Concededly, the respondent gave no credit to petitioners' claim with respect to the $100,000 in cash. This claim of petitioners is based only on the testimony of Karl and his wife, testimony which to us is biased and improbable. Here, as in Frank Imburgia, 22 T.C. 1002, we are urged to accept the testimony because it is "uncontradicted"; but, as we said in the Imburgia case, we are not bound to accept such testimony where there is practically no possibility of express contradiction and where the testimony appears to be highly improbable or manifestly unreasonable. Aside from the claimed $100,000 in undeposited cash the parties have stipulated the correctness of all assets listed by Karl and the amount of petitioners' living expenses in the taxable years. In 1942 the parties agree that petitioners' nondeductible living expenses were $3,000, with the result that on the stipulated figures petitioners had a gross income of $16,462.97 for that year. We can find no evidence from which it is established that any part of this figure is due to the claimed $100,000 in cash, so even *165 if we accept the beginning cash at that figure, it would not affect income for 1942 as determined by the net worth method. Karl's reported income for 1942 was $9,739.34 which leaves unreported income of $6,723.63, and this discrepancy is unexplained by any testimony of record. No attempt is made to account for the use of the $100,000 until 1943 when $70,000 was said to have been spent for Government securities and this amount together with $30,000 more was used in 1944 for the purchase of $100,000 in annuities. So far as the claimed starting cash is concerned it would have no effect, as we see it, on the determined unreported income for 1942. Turning to the year 1943, the respondent contends that even assuming, arguendo, that petitioners had the $100,000 cash on December 31, 1941 and that $70,000 of this cash was used in 1943 to purchase Government bonds, yet the petitioners stipulated net worth increase for the year totaling $89,247.16, (subject to our finding with respect to the $5,000 capital gain in that year), which leaves an unexplained increase of $11,352.80. Petitioners reported but $2,894.36 as net income for that year. We also note that petitioners had net bank deposits *166 in 1943 which exceeded reported receipts by $13,974.22. There was also unreported interest in 1943 amounting to $124.22. Coupled with the unreported $5,000 capital gain on the sale of the Floral Company stock there was a substantial amount of unreported income in 1943, regardless of cash on hand. With reference to 1944, this is the only year in which the possession of the $100,000 cash would explain away the net worth increase. We have not been convinced by the evidence, however, that petitioners had this amount, or any similar amount, on hand at the beginning of the taxable period, and have so found. Testimony with regard to how this amount, all in $1,000 bills, was accumulated is not convincing and, in our opinion, is improbable. Apparently Karl was engaged for some time in bootlegging and gambling. But he kept no books on such transactions and his reported income in negligible amounts from all sources prior to the taxable period negates his claim that he had accumulated any substantial amount of cash, in an undeposited cache, prior to December 31, 1941. We have carefully studied the entire record and the arguments of counsel, and can reach no other conclusion but that a part *167 of the deficiency for each year was due to fraud with intent to evade tax. Furthermore, we are not convinced that petitioners had the $100,000 which they claim was held in a safety deposit box on December 31, 1941. The agreed on increases in net worth in the taxable years when taken into consideration with the stipulated amounts deposited in banks and the purchases of annuities and Government bonds must be accepted as representing unreported income. These unreported amounts are substantial. They constitute convincing evidence that a part of the deficiency for each year was due to fraud with intent to evade tax. Accordingly, the issues are decided in favor of respondent. Decisions will be entered under Rule 50.